UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

William E. Dirkes, M.D.,

      Plaintiff,

  v.

Hartford Life Group Insurance Company, et al.,

      Defendants.

Case No. 1:05cv254

Judge Michael R. Barrett

## OPINION AND ORDER

Before the Court is Magistrate Judge Black's February 19, 2008 Report and Recommendation (hereinafter "R&R") (Doc. 66). Proper notice has been given to the parties under 28 U.S.C. §636(b)(1)(C), notice that the parties would waive further appeal if they failed to file objections to the Report and Recommendation in a timely manner. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Plaintiff filed Objections to the Magistrate's R&R on March 4, 2008 (Doc. 67) as well as Objections (Doc. 68) to the Magistrate Judge's Order (Doc. 65) granting Defendants' motion to strike and denying Plaintiff's motion for leave to briefly depose Hartford personnel. Defendants filed a response to Plaintiff's objections to the R&R on March 21, 2008 (Doc. 69) to which Plaintiff replied (Doc. 71) and Defendants filed a response to Plaintiff's objections to Doc. 65 (Doc. 70). Also pending before this Court is Plaintiff's Objections (Doc. 42) to the Order of the Magistrate Judge (Doc. 39) granting Defendants' motion to supplement the administrative record and denying Plaintiff's motion to supplement the administrative record. Defendants filed a response to these objections (Doc. 45). The parties then each filed supplemental responses, per the Court's request, as to the Objections to the R&R (Doc. 76 and 79). A

hearing was held on July 8, 2008 to hear the objections to the R&R (Doc. 65).

FACTS[1]

Plaintiff William E. Dirkes, M.D. (hereinafter "Plaintiff"), an anaesthesiologist, asserts claims against the Defendants, Hartford Life Group Insurance Company and Group Long Term Disability Income Protection Plan of Anesthesia Associates of Cincinnati, Inc. (the "Plan"), to recover long-term disability benefits under a group long term disability income protection plan. Plaintiff participated in the plan during his employment with Anesthesia Associates of Cincinnati, Inc. ("AAC").

Continental Casualty Company, dba CNA, was the original underwriter of the policy that was issued in 1998. Plaintiff argues that this policy should govern. However, a newer policy was then issued by Continental Casualty Company in 2001 to provide coverage to participants in the Plan. However, neither Plaintiff nor his employer claim to have received the 2001 policy or approved of the changes. Defendant argues that the 2001 policy should govern[2].

At some point in time the underwriting company became CNA Group Life Assurance Company. It is not clear to the Court exactly how this change occurred. Plaintiff and his employer also claim to not have received notification of this change. Later, an

---

[1] The background of this matter and the facts are properly set forth in the R&R (Doc. 66). This Court will only briefly recite the basic facts that are relevant to this order.

[2] This policy has been reissued since 2001; however, it appears that the subsequent versions are essentially the same in all material aspects. The policy that the Court refers to as the 2001 policy can be found at AR_0312-AR_0332. The Court uses this policy as opposed to the subsequent versions because it is unclear when those versions were issued. Further, the Court also does not find the Hartford policy found at POL_0001-0025 to control since it was issued after 2003.

endorsement to the 2001 policy was issued providing that CNA Group Life Assurance Company changed its name to Hartford Life Group Insurance Company. *See* POL_0024, "Change in name of underwriting company". This name change took effect on December 31, 2003, after Plaintiff's claim for disability was submitted. Upon review of the supplemental filings, it appears that, in 2004, Hartford reissued the 2001 policy with its logo on it to reflect this change. However, no other substantive changes were made to the policy.

At the hearing Plaintiff argued that not only should the 1998 policy govern but, for the first time, argued that this matter should be remanded to Dr. Steven Carter, the plan administrator. Defendant argued that Hartford is the proper Defendant and is who this matter should be remanded to.

The R&R recommends to this Court that Hartford's motion to affirm the administrative decision (Doc. 49) be denied; that Plaintiff's motion to reverse the administrative decision (Doc. 41) be granted consistent with the terms contained in the R&R; and that this matter be remanded to Hartford for further factual determinations.

## REPORT AND RECOMMENDATION

When objections are received to a magistrate judge's Report and Recommendation on a dispositive matter, the assigned district judge "shall make a de novo determination...of any portion of the magistrate judge's disposition to which specific written objection has been made...." Fed. R. Civ. P. 72(b). After review, the district judge "may accept, reject or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id; see also* 28 U.S.C. 636(b)(1)(B). General objections are insufficient to preserve any issues for review; "[a] general objection to the

entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Secretary of Health and Human Services,* 932 F.2d 505, 509 (6th Cir. 1991).

Plaintiff does not object to the recommendation of the Magistrate Judge but only objects to the factual finding that the 2001 policy governs this matter arguing, instead, that it is the 1998 policy that controls. Plaintiff argues that Hartford did not have authority to issue a new policy without approval of the plan sponsor and that Hartford can not retroactively issue a policy sometime after 2003 that has an effective date of 2001. (See. Doc. 67, p1). The Magistrate Judge has addressed this issue on numerous occasions and this Court specifically addressed it in its order of August 16, 2006 (Doc. 23). As this Court previously stated, "the 2001 plan clearly states that 'it replaces and cancels any other certificate previously issued to You under the policy.' Thus, the 2001 plan must govern this matter." (Doc. 23, p 5). The Magistrate Judge found this to be the "law of the case." (Doc. 66, FN 2). Although the Court agrees, for the sake of clarity, the Court will address the issue again considering that the "law of the case" was made in the context of a motion to dismiss and was based solely upon the allegations contained in the amended complaint and the policy documents themselves as required by Civ. R. 12(b)(6). Therefore, this Court will consider the issue now in light of the entire Administrative Record.

In addressing whether Continental[3] should be a defendant in this matter, this Court previously stated, in a footnote, that:

> The Court does have a concern as to Continental Casualty Company. Continental Casualty Company was the original underwriter of the 1998 policy (Doc. 3, ¶2). At that time Continental was doing business as CNA (*Id.*). It is unclear from the pleadings currently before this Court if CNA is the same entity as CNA Group Life Assurance Company. The Defendants

---

[3]Continental has previously been dismissed from this matter by the Court.

4

suggest that it is the same entity (Doc. 15, p4). The Plaintiffs do not address this issue. If CNA is CNA Group Life Assurance Company and now Hartford Life Group Insurance Company then Continental would not be a proper Defendant even under the 1998 policy. However, if CNA is not the same entity as CNA Group Life Assurance Company then a question may arise as to whether or not Continental dba CNA had the authority to transfer underwriting and fiduciary responsibilities to CNA Group Life Assurance Company without the consent of the participating employer. However, since the Amended Complaint does not allege an unlawful assignment or transfer the Court will not address this issue.

It is this language to which Plaintiff now relies. However, after further review of the Administrative Record, the pleadings in this matter and listening to the arguments of counsel at the hearing, the Court deems the issue of who is the underwriter, Continental, CNA Group Life Assurance, or Hartford, to not be as significant as Plaintiff alleges since Defendant Hartford admits that it is the proper defendant in this matter and the Court has previously dismissed Continental.

Furthermore, both the 1998 policy and the 2001 policy provide that the policy is administered by The Stedman Insurance Group. See AR_0069, AR_0332. "When interpreting ERISA plans, federal courts apply 'general rules' of contract law as part of the federal common law." *Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 615 (6th Cir. 2002). As such, "courts interpret ERISA plan provisions according to their plain meaning, in an ordinary and popular sense," giving effect to any unambiguous terms. Id. at 617-18 (internal quotation marks and citations omitted). ERISA defines an "employee welfare benefit plan," as any plan, fund, or program established by an employer to provide disability benefits, through the purchase of insurance or otherwise, to participants or their beneficiaries. 29 U.S.C. § 1002(1). The Court does not find merit in Plaintiff's argument that the "Plan administrator" is Steven C. Carson, M.D. just because he is listed as such

5

on the Clinic Master Application.  The Clinic Master Application also provides that the administrator is The Stedman Insurance Group and the policies provide that claims are to be submitted to Continental Casualty Company for administration.  See AR_0083, AR_0070, AR_0326, AR_0331.

Additionally, Defendant Hartford is the fiduciary with respect to the processing of claims for benefits under its policy.  See AR_0083 and AR_0326.  ERISA defines a fiduciary as follows: "a person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . ., or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).  In similar circumstances, courts have routinely held that parties exercising discretionary responsibility related to claims are fiduciaries of employee benefit plans under ERISA. *Ruble v. UNUM Life Ins. Co.*, 1989 U.S. Dist. LEXIS 17931, 9-10 (W.D. Mich. May 17, 1989). *See, e.g., Benvenuto v. Connecticut General Life Insurance Co.,* 643 F. Supp. 87, 90 (D.N.J. 1986); *McLaughlin v. Connecticut General Life Ins. Co.*, 565 F. Supp. 434, 441 (N.D. Cal. 1983); *Schulist v. Blue Cross of Iowa*, 553 F. Supp. 248, 252 (N.D. Ill. 1982), [*10] aff'd, 717 F.2d 1127 (7th Cir. 1983); *Eversole v. Metropolitan Life Insurance Co.*, 500 F. Supp. 1162, 1165 (C.D. Cal. 1980).  Here, the insurance company has discretionary responsibility related to claims and is, therefore, the fiduciary. See AR_0083-AR_0084 and AR_0326-AR_0328.

The real issue before this Court is which policy governs. In other words, which policy was in effect in 2003 when the Plaintiff ceased working, the 1998 policy (AR_0069-AR_0085) or the 2001 policy (AR_0312-AR_0332).  Both policies were issued by

Continental Casualty Company and administered by The Stedman Insurance Group. Plaintiff alleges to never have received the 2001 policy and Defendant can not prove that Plaintiff did receive it. See AR_0068.

In support of Plaintiff's assertion, he directs the Court to two letters from the Stedman Insurance Group to Plaintiff's employer, dated January 26, 2001 and January 29, 2002, contained in the administrative record . These letters explain the new rate increases but also state that the plan continues to provide "speciality" coverage and maintain the current plan design. See AR_0086-AR_0087 and AR_0559-AR_0560. Also, based upon the same arguments made to the Defendant that have been made here, i.e., that the 1998 policy governs because the employer never received the 2001 policy, the Defendant used the definition of disability as set forth in 1998 policy when upholding the denial of Plaintiff's claim on appeal. See AR_0093. Although it must be noted that the initial denial was based upon the language in the 2001 policy.

However, the ERISA statues do not require that an employer or participant approve of plan changes. It only requires that a procedure for amendments be set forth. See 29 UCS §1102(b)(2). Here the procedure is adequately set forth, in the "Renewability Commitment" section of the 1998 policy, which states, in relevant part, that "[t]he Insurance Company cannot terminate the Group Practice Master Policy or change any of its benefit provisions without first giving, at any time during the policy term, a one year advance notice to the Holder and Group Practice Insurance Administrator...". The Holder in this matter is defined as the Group Practice Insurance Trust. The Group Practice Insurance Administrator is The Stedman Insurance Group. There is no requirement that the "Clinics," defined as the employers who make up the trust, approve of the changes when they are

7

made.  In addition, in the letters referenced above, both letters discuss changes to the policy and that new Certificates of Insurance will be or had already been mailed to AAC.  Defendant argues that this language should have, at the very least, put ACC on notice of policy changes.  Defendant also points out that even after receiving these letters, ACC renewed its policy.  The Court agrees.

Moreover, although ERISA does require notice to an insured of his rights under a policy and benefit plan administrators are required to provide participants with copies of the plan's annual report, a statement of rights under the plan, and a statement of benefits, see 29 U.S.C. §§ 1022, 1024, 1025, Plaintiff did not claim a denial of his informational rights under ERISA.  Had he done so he just might be entitled to the statutory penalty for failure to provide plan documents.  29 U.S.C. § 1132(c).  However, the denial of his benefits does not change the controlling policy.  *See Nicholas v. Std. Ins. Co.*, 48 Fed. Appx. 557, 563-564 (6th Cir. 2002)(unpublished).  The Sixth Circuit has stated "that 'nothing in [ERISA's civil enforcement provision] suggests that a plan beneficiary should receive a benefit award based on a plan administrator's failure to disclose required information.'" *Del Rio v. Toledo Edison Co.*, 130 Fed. Appx. 746, 751 (6th Cir. 2005)(unpublished) *citing Lewandowski v. Occidental Chem. Corp.*, 986 F.2d 1006, 1009 (6th Cir. 1993).

Therefore, based upon the above, the Court finds that the 2001 policy controls.

<u>ORDERS (DOC.39 AND 65)</u>

Plaintiff also objects to the above referenced non-dispositive orders of the Magistrate Judge (See Doc. 42 and 68).  Federal Rule of Civil Procedure 72(a) provides that a district judge shall consider a party's objections to a magistrate's order and "shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or

8

contrary to law." As this Court has previously recognized, the clearly erroneous standard "mandates that the district court affirm the magistrate's decision unless, on the entire evidence, it 'is left with the definite and firm conviction that a mistake has been committed.' In the absence of clear error, the magistrate's order must stand." *Bank One Columbus, Ohio, N.A. v. First Financial Ventures, LLC*, 2001 WL 840310, *3 (S.D.Ohio 2001), *quoting Farley v. Farley*, 952 F.Supp. 1232, 1235 (M.D.Tenn. 1997) (internal citations omitted). Based upon this standard of review, the Court finds that Plaintiff's objections (Doc. 42 and 68) are not well-taken and are hereby DENIED. This Court can not find any portion of the Orders that are clearly erroneous or contrary to law.

CONCLUSION

Upon *de novo* review, the Court concludes that the February 19, 2008 Report and Recommendation of Magistrate Judge Black (Doc. 66) is hereby **ADOPTED**; Hartford's motion to affirm the administrative decision (Doc. 49) is **DENIED**; Plaintiff's motion to reverse the administrative decision (Doc. 41) is **GRANTED** consistent with the terms contained in the R&R and in this Order; and this matter is **REMANDED** to Hartford for further factual determinations. The Clerk of Court is directed to terminate this matter from the docket of this Court.

**IT IS SO ORDERED.**

                                                        s/Michael R. Barrett
                                                        Michael R. Barrett, Judge
                                                        United States District Court